UNITED STATES, Appellee,

v.

Private First Class Edward L. HAR-
RINGTON, 241–08–0582, United
States Army, Appellant.

CM 446500.

U.S. Army Court of Military Review.

28 Jan. 1987.

789

For Appellant: Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Kathleen A. Vanderboom, JAGC, Captain Donna L. Wilkins, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain Tarek Sawi, JAGC (on brief).

## OPINION OF THE COURT ON FURTHER REVIEW

De GIULIO, Judge:

Appellant was originally tried in October 1984 by a general court-martial composed of officer and enlisted members. Contrary to his pleas, appellant was found guilty of two specifications of wrongful distribution of marijuana in violation of Article 112a, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. § 912a (Supp II 1984). The offenses occurred in June and July 1984. He was sentenced to a bad-conduct discharge, confinement at hard labor for nine months, and forfeiture of all pay and allowances for nine months. The convening authority approved the sentence. Because Article 112a, UCMJ, did not become effective until after the date of the offenses for which the appellant was charged, this court set aside the findings and sentence and authorized a rehearing. *United States v. Harrington*, CM 446500 (A.C.M.R. 13 Sep. 1985) (unpub.).

On 29 January 1986 a rehearing was held. Pursuant to his pleas, appellant was found guilty by a military judge sitting as a general court-martial for the June and July 1984 marijuana distribution offenses in violation of Article 134, UCMJ, 10 U.S.C. § 934 (1982). He was sentenced to a bad-conduct discharge, confinement for four months, and forfeitures of $500.00 pay per month for four months. The convening authority approved the sentence except that he reduced the forfeitures to $455.00 pay per month for four months. The case is now before this court for further review.

Appellant alleges, and this court agrees, that the second court-martial lacked jurisdiction because it was purportedly convened by a commander without authority to convene a general court-martial.

For appellant's second trial, his case was referred by the purported Commander, Fort Riley, Kansas. Headquarters Fort Riley, and 1st Infantry Division (Mechanized), two separate units, are located at Fort Riley, Kansas. The Commander of Headquarters Fort Riley, is also the Commander of the 1st Infantry Division (Mechanized). Both units have general court-martial jurisdiction. At the time appellant's case was referred to trial by general court-martial, the 1st Infantry Division (Mechanized) was absent from Fort Riley, Kansas, participating in Return of Force to Germany (REFORGER). The single Commander of both units was with the 1st Infantry Division (Mechanized) and therefore was temporarily absent from Headquarters Fort Riley, which remained at Fort Riley, Kansas. The senior officer present within the unit at Fort Riley was Colonel L, the Staff Judge Advocate. In his affidavit submitted to this court, Colonel L reveals that he advised the Deputy Post Commander (DPC), an officer junior in date of rank to him, that the DPC was in command of Headquarters Fort Riley, upon departure of the 1st Infantry Division (Mechanized).[1]

---

1. By Letter Order dated 9 Jan. 1986, the DPC assumed command by stating, "[b]y authority of paragraph 3–4a, AR 600–20, the undersigned assumes command of Fort Riley, Kansas 66442, effective 0001 hours, 8 January 1986 through 0001 hours, 21 February 1986. [s]igned/Havis L. Holloway, Col, MP, Commanding." It is noted that this assumption format is to be used when the next regularly assigned senior officer assumes command. *See* Army Regulation 600–

As a consequence, the DPC purported to assume command and refer the case to trial by general court-martial.[2] After his return to Fort Riley from REFORGER, the Commanding General took initial action on this case.

As a requisite for court-martial jurisdiction, "[t]he court-martial must be convened by an official empowered to convene it." Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 201(b)(1) [hereinafter cited as R.C.M.]. The applicable discussion to this Rule[3] provides that, "[t]he authority to convene courts-martial is independent of rank and is retained as long as the convening authority remains a commander in one of the designated positions. *The rules by which command devolves are found in regulations of the Secretary concerned.*" Discussion R.C.M. 504(b)(1) (emphasis added). The regulation which governs devolution of command for the Army is AR 600–20. Paragraph 3–4(a), AR 600–20 provides, in pertinent part, "[i]f a commander of an Army element ... is temporarily absent the next senior regularly assigned Army member will assume command."[4]

■ Cases cited by the government do not support their contention that the DPC was properly in command. In *United States v. Richardson*, 5 M.J. 627 (A.C.M.R. 1978), it was held that the DPC could properly assume the command of Fort Riley. In that case, however, it appears that the DPC was the next senior regularly assigned officer. In *United States v. O'Connor*, 19 M.J. 673 (A.F.C.M.R.1984), Air Force Regulations were properly followed to appoint an officer who was not next senior, as group commander. Essentially, that officer was appointed by designation of the President under Air Force Regulations. Another case cited by the government is not applicable because the accuser outranked the convening authority and was disqualified under the provisions of Article 23(b), UCMJ, 10 U.S.C. § 823(b). *United States v. Ridley*, 22 M.J. 43 (C.M.A. 1986).

■ The government urges that a letter sent to FORSCOM requesting authorization for the DPC to sign letters of reprimand that contained a statement that the DPC will be the commander during REFORGER amounts to tacit approval from FORSCOM, or in the alternative, that the staff judge advocate voluntarily relinquished any right to take command. Further, the government contends that the role of chief legal officer is of such importance that the command should not be deprived of his services. They assert that his legal actions in the case conflict with his duties as a convening authority and he would be disqualified from acting in the latter capacity. We find no merit in these arguments.

We believe that assumption of command by officers to include officers of the Judge Advocate General's Corps of the Army [hereinafter referred to as JAGC] is governed by AR 600–20. Indeed, Army Regulation 27–1, Legal Services: Judge Advocate Legal Service para. 1–9, (1 Aug. 1984) provides, "[t]he provisions of AR 600–20 apply in the designation of command. Offi-

---

20 Personnel: General Army Command Policy and Procedures, para. 3–4a (15 Oct. 1980) (version in effect at time of trial) [hereinafter cited as AR 600–20].

**2.** It should be noted that Headquarters, United States Army Forces Command (FORSCOM), approved an exception to permit the DPC to sign letters of reprimand to personnel for alcohol-related offenses which are normally required to be issued only by a general officer. The request from Fort Riley for the exception did indicate that the DPC would be the acting commander of Fort Riley during the absence of the division for REFORGER. However that request did not seek permission from FORSCOM to appoint the DPC, who was not the senior member of the command, as acting commander.

**3.** Discussion to R.C.M. 201(b)(1) refers to R.C.M. 504.

**4.** A footnote to this provision states, "[r]efers (in order of priority) to commissioned officer, warrant officer, cadet, noncommissioned officer, specialist, or private present for duty and not ineligible under Paragraph 3–11 or 3–12." A review of paragraphs 3–11 and 3–12 leads us to conclude that a staff judge advocate is "not ineligible to command."

cers of the JAGC are eligible to assume command."

When the government desires to place a junior member in command, a regulatory procedure to be followed is set forth in paragraph 3–3b, AR 600–20, which provides:

When an officer who is junior is designated to command, a military letter or memorandum will be used to announce the appointment and will contain the following information:

Subject: Appointment of Commander.

By direction of the President, (grade, name, SSN, and branch) is appointed commanding officer or commanding general of (complete unit designation and UIC), effective (date).

(Authentication)

In this case the required appointment was not utilized. In using such an appointment paragraph 3–3c, AR 600–20 provides:

Commanders will not use the Presidential authority cited in this paragraph to appoint a junior member as their own successor, either temporarily or permanently. In some cases, a commander having authority under this paragraph may find it necessary to temporarily place a junior member in his position as acting commander. If so, a request stating the circumstances and asking for the appointment to be made will be sent to the next higher commander having authority under this paragraph.

Applying the rules of AR 600–20, and AR 27–1, we must conclude that Colonel L, the Staff Judge Advocate, was the next senior regularly assigned officer eligible to assume command under the cited regulations, and consequently, to convene a general court-martial in this case. The government has not shown that Colonel L was incapacitated or otherwise ineligible to assume command. It is clear from these provisions that neither a proper request was made to appoint a junior member, nor a proper designation by direction of the President issued. Simply stated there was

a failure to follow established regulations. The oft-cited principle that the government must adhere to its own regulations has application to the military. *United States v. Russo,* 1 M.J. 134 (C.M.A.1975); *United States v. Perl,* 2 M.J. 1269, 1271 (A.C.M.R. 1976), *affirmed* 8 M.J. 24 (C.M.A.1979). This principle is also applicable to this case.

We find that the command of Fort Riley did not devolve to the Deputy Post Commander. He therefore was not a commander in one of the positions designated to convene general courts-martial. Consequently, the court-martial was not convened by a person empowered to convene it and was without jurisdiction to try appellant. *See* R.C.M. 201(b)(1).

▋ Having found that the DPC could not refer this case to trial by general court-martial, we must determine if the Commanding General's initial action ratified the attempted referral. *See United States v. Alvarez,* 5 M.J. 762 (A.C.M.R.), *petition denied,* 5 M.J. 369 (C.M.A.1978). *Alvarez,* however, can be distinguished from the case before us. In *Alvarez,* although the officer who signed the convening order was not in command on the date of the order, the court-martial was properly convened when the successor in command, in an order referring the accused's case to trial, ratified the previous order. Although the Commanding General of Headquarters Fort Riley and the 1st Infantry Division (Mechanized) had returned and took action in the case before us, we are convinced that the convening authority's action did not operate as a ratification of the attempted referral. *See United States v. Greenwalt,* 20 C.M.R. 285, 289 (C.M.A.1955).

Accordingly, the findings of guilty and the sentence are set aside. An "other trial" [5] may be ordered.

Senior Judge PAULEY and Judge KENNETT concur.

---

5. *See* R.C.M. 810(e).