UNITED STATES, Appellant,

v.

Atlas R. YATES, Major, U.S. Army, Appellee.

No. 59,231.
CM 8601029.

U.S. Court of Military Appeals.

April 10, 1989.

For the United States: *Colonel Norman G. Cooper* (argued); *Lieutenant Colonel Gary F. Roberson, Major Kathryn F. Forrester, Captain Karen L. Taylor* (on brief).

For the Accused: *Captain Brian D. DiGiacomo* (argued); *Colonel John T. Edwards, Major Eric T. Franzen, Captain Scott A. Hancock* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

On October 27 and 28, 1986, the accused was tried by a general court-martial composed of members at Fort Sheridan, Illinois. Contrary to his pleas, he was found guilty of adultery and false swearing, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a dismissal. The convening authority commuted the dismissal to forfeiture of $2,000 pay per month for 12 months. The Court of Military Review subsequently set aside the findings of guilty and the sentence and ordered "[a]nother trial."[1]  25 MJ 582 (1987).

---

1. As noted by the Court of Military Review, this case was "referred ... for review" to that court by the Judge Advocate General of the Army in

Pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), the Judge Advocate General of the Army requested this Court to review the following issue:

WHETHER SUBSTITUTION OF COURT MEMBERS BY A *DE FACTO* CONVENING AUTHORITY WHO FUNCTIONED AND WAS RECOGNIZED AS THE COMMANDER WAS JURISDICTIONAL ERROR BECAUSE HE HAD NOT ASSUMED COMMAND IN ACCORDANCE WITH ARMY REGULATION[S] AT THE TIME OF HIS ACTION?

We hold that no error, jurisdictional or prejudicial, was shown to have occurred in this case. *Cf. United States v. Jette*, 25 MJ 16 (CMA 1987).

The court below stated the following facts which gave rise to the granted issue:

On 16 October 1986, the commander of Fort Sheridan referred the charges against appellant to a general court-martial convened by Court–Martial Convening Order Number 9. Appendix I. Because appellant was a major selected for promotion and officers junior in grade to him were appointed, an amending order was apparently deemed necessary. In the absence of the post commander, the deputy post commander issued Court–Martial Convening Order Number 10, which eliminated seven of the ten members from the court-martial and added five members senior to the appellant. Appendix II. On the day the amending order was published, the deputy post commander was not the most senior officer present for duty at Fort Sheridan. Rather, the director of reserve component support, who served as a court member, was senior to him and was present for duty that day.[1] After the trial, the post commander returned to Fort Sheridan and took action in this case.

Footnote 1 states:

Staff officers are not within the chain of command but they are not disqualified from assuming temporary command of an organization. *United States v. Har-*

accordance with Article 69(a), UCMJ, 10 USC

*rington*, 23 MJ 788, 790 (ACMR 1987) (staff judge advocate); Army Regulation 600–20, Army Command Policy and Procedures, paras. 2–1 and 3–12i (20 August 1986) (inspector general).

25 MJ at 583.

We further note that there is no evidence in the record of any protest by the director of reserve component support, Lieutenant Colonel Cofield, to the assumption of command by the deputy post commander, Lieutenant Colonel Junio. We also note that this assumption of command was announced in a letter dated October 18, 1986, and the authority cited for this action was paragraph 3–4, AR 600–20 (Aug. 1986). Finally, we note that no objection was raised at trial to the convening-authority actions taken by the deputy post commander in this case.

------------

Para. 3–4, AR 600–20 (August 20, 1986) states:

3–4. Death, disability, retirement, reassignment, or absence of the commander

a. *General. If a commander of any Army element dies, becomes disabled, retires, is reassigned, or is temporarily absent, the senior regularly assigned Army member will assume command. This refers* (in order of priority) *to commissioned officers,* warrant officers (WOs), cadets, NCOs, specialists, or privates *present for duty and not ineligible under paragraphs 3–11 or 3–12.* He or she will assume command until relieved by proper authority except as provided for in paragraph 3–4c below. Assumption of command under these conditions will be announced as per paragraph 3–1b. However, the announcement will indicate assumption as acting commander unless designated as permanent by the proper authority. It is not necessary to rescind the announcement designating an acting commander to assume duties of the commander "during the temporary absence of the regularly assigned commander" if the announcement gave the time element involved. A rescinding announcement is required if the temporary

§ 869(a). 25 MJ 582, 583 (1987).

assumption of command was for an indefinite period.

(Emphasis added.)

■ As noted above, paragraphs 3–11 and 3–12 of this same regulation [2] delineate

**2.** 3–11. Ineligibility for command of post or activity

A person will be considered ineligible for command of a post or activity when he or she is—

a. Quartered there, but has a headquarters or office elsewhere.

b. A student at a service school or civilian institution or is undergoing individual training, instruction, or intransit processing at a post where he or she is not a part of the command complement.

c. Not permanently assigned, and the unit is not permanently assigned to the post.

d. Assigned mainly as a permanent member of a board.

e. Prohibited from assuming command by statute (AR 600–31) or by paragraph 3–12.

f. Assigned specific duty aboard a military vessel or aircraft where the officer's particular duty, specialty, or MOS does not technically qualify him or her to assume the duty of ship's master or aircraft commander.

g. In arrest. (A person in arrest is ineligible to exercise command of any kind.)

3–12. Restrictions

a. *General Staff officers.* An officer assigned to duty on (or detailed to duty with) the Army General Staff will not command troops other than personnel on duty with the Army General Staff unless specifically directed to do so by an authority named in paragraph 3–3. A General Staff officer with troops may assume command when he or she is the senior regularly assigned officer of the command present for duty. The officer must not be ineligible under the provisions of this paragraph and paragraph 3–11.

b. *Officers on duty in DA Staff agencies.* Officers on duty or detailed to duty in any of the staff agencies, Services, and bureaus of DA (including heads thereof) will not normally assume command of troops other than those of the Service, staff, or bureaus where they are on duty. Exceptions must be directed by proper authority.

c. *Officers of the AMEDD* [Army Medical Dept.]. Officers of the AMEDD may exercise command only within the AMEDD. As an exception, officers of the Medical Service Corps may command troops that are not part of the AMEDD. This will be done when authorized by the Secretary of the Army; the commanders of MACOMs, Army groups, armies, corps, divisions, and comparable units; the chiefs of Services; or heads of other DA Staff agencies. (See AR 10–6 and AR 40–1 on use of AMEDD officers.)

various situations in which a person is ineligible for or prohibited from taking command. In this light, the mere fact that Lieutenant Colonel Cofield was senior in date of rank to Lieutenant Colonel Junio

d. *Chaplains.* A chaplain has rank without command. (See 10 USC § 3581.) Although chaplains may not exercise command, they have authority to exercise functions of operational supervision and control.

e. *Commanding officer of troops on transports.* Military personnel embarking on Military Sealift Command vessels are available for command duty, unless otherwise indicated in their travel orders or, by reason of their branch of Service. General officers will be excluded from this requirement. Designation of colonels will be at the discretion of the terminal commander.

f. *USAR unit commanders.* The authority delegated under paragraph 3–3 will apply in the following cases when it is not practical to assign the senior officer to command:

(1) When the USAR officer selected to command a USAR unit, while in Reserve duty training status, is junior in date of rank (as per para 6–3) to other officers of the same grade assigned to that unit.

(2) When a USAR unit is ordered to active duty, and the assigned unit commander is junior in date of rank (as per para 6–3) to other assigned officers of the same grade.

g. *Warrant officers.* When assigned duties as station, unit, or detachment commander, warrant officers are vested with all powers usually exercised by commissioned officers. (See AR 611–112, para 1–7 for exceptions.)

h. *Partially disabled officers.* Partially disabled officers continued on active duty under AR 635–40, chapter 6, will be assigned to positions in which their special qualifications make them of particular value to the Service. Such officers will not be assigned to command positions unless the assigning authority positively determines that the person—

(1) Has the medical (physical) career potential to serve in combat situations.

(2) Is able to serve until the age for mandatory retirement.

i. *Inspectors general.* An officer detailed to duty as an inspector general will not assume command of troops while so detailed. However, an inspector general is not precluded from assuming temporary command of an organization if he or she—

(1) Is the next regularly assigned senior officer of the organization.

(2) Is not otherwise ineligible.

(3) Has been relieved from detail as an inspector general during the period of temporary command.

and present for duty does not establish the illegality of the latter's assumption of command. Accordingly, in view of the presumption of regularity, we must reject this belated and insufficient attack on the lawfulness of Lieutenant Colonel Junio's actions. *See United States v. Moschella,* 20 USCMA 543, 546, 43 CMR 383, 386 (1971).

We further note that the "de facto commander" rule of *United States v. Jette, supra,* is not necessarily inapplicable in the present case. The Court of Military Review suggested as much because of dicta in *Jette* implying these service regulations have jurisdictional significance when expressly characterized as such by Congress. 25 MJ at 18–19. *E.g.,* Art. 23(a)(7), UCMJ, 10 USC § 823(a)(7). True, the convening authority's power in this case is based on a similar statutory provision, Art. 22(a)(8), UCMJ, 10 USC § 822(a)(8), and its language "designated by the Secretary concerned."[3] However, the particular designation by the Secretary of the Army was to "the commanding officer[ ] of ... Fort Sheridan." *See* General Orders No. 3, Headquarters, Department of the Army (January 19, 1981). This is language similar to that employed in the statute at issue in *Jette* and suggests a similar result.

■ Our holding today and that in *United States v. Jette, supra,* are not intended to encourage deliberate or negligent violations of service regulations by service personnel. Again, our primary concern in these cases is to effect the will of Congress in enacting Articles 22, 23, and 24, UCMJ, 10 USC §§ 822, 823, and 824, respectively. The realities of command, not unexecuted technical possibilities, best satisfy the purpose of these statutes. *United States v. Jette, supra.* Moreover, we are convinced that Congress could not have intended that the accused's court-martial conviction be reversed simply because Lieutenant Colonel Junio's date of rank was 29 days later than Lieutenant Colonel Cofield's. *See generally* Art. 59(a), UCMJ, 10 USC § 859(a). Finally, even assuming these service regulations deserve determinative consideration, the accused's belated assertion of regulatory irregularity in the present case is at best speculative. *See United States v. Moschella, supra.*

The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for resubmission to that court for further proceedings.

Judge COX concurs.

EVERETT, Chief Judge (concurring in the result):

*See* my concurrence in *United States v. Jette,* 25 MJ 16 (CMA 1987).

---

3. Article 22, Uniform Code of Military Justice, 10 USC § 822, was amended effective October 1, 1986, to redesignate the applicable section. The amendment applies to this case since the charges were referred after the effective date of the amendment.