UNITED STATES, Appellant,

v.

Vincent C. JETTE, Senior Airman, U.S.
Air Force, Appellee.

No. 53,992
ACM S26701.

U.S. Court of Military Appeals.

Sept. 21, 1987.

For Appellant: *Lieutenant Colonel Morris A. Tanner, Jr.* (argued); *Colonel Kenneth R. Rengert* and *Lieutenant Colonel Donal F. Hartman, Jr.* (on brief); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni.*

For Appellee: *Captain Deborah J. Hudspeth* (argued); *Colonel Leo L. Sergi* (on brief).

Opinion of the Court

SULLIVAN, Judge:

On February 7, 1985, at Clark Air Base, Republic of the Philippines, the accused was found guilty of a consummated assault, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. He pleaded not guilty to this offense. The members of his special court-martial sentenced him to a bad-conduct discharge, confinement for 6 months, forfeiture of $200.00 pay per month for 6 months, and reduction to E–2. The convening authority approved the sentence but suspended execution of the discharge with provision for automatic remission. The Court of Military Review, 22 M.J. 803, set aside the findings of guilty and the sentence and authorized an "other trial."

The acting Judge Advocate General of the Air Force forwarded this case to our Court for review in accordance with Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2). He particularly asks:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED AS A MATTER OF LAW IN DETERMINING THAT COLONEL K WAS NOT THE COMMANDER OF THE 3D COMBAT SUPPORT GROUP, CLARK AB, AFTER 28 JANUARY 1985.

We hold that Colonel Kimball was authorized by Article 23(a)(4), UCMJ, 10 U.S.C. § 823(a)(4), to act as a convening authority

in this case. *See United States v. Kalscheuer*, 11 M.J. 373, 380 (C.M.A.1981).

The Court of Military Review delineated the facts pertinent to our resolution of the certified question as follows:

> When the accused was being arraigned, trial counsel announced that the charge was properly referred to trial by the commander, Colonel K. The reference for trial, copied *verbatim* into the record of trial, shows the charge was referred to a special court-martial convened by Special Order AD–7, Headquarters, 3d Combat Support Group, dated 23 January, 1985. Special Order AD–7 was inserted into the record of trial at the appropriate place and shows the convening authority to be Colonel F and not Colonel K as stated by the trial counsel. A copy of an electrical message from Headquarters Pacific Air Forces addressed to the Commander, 3d Combat Support Group and dated 21 January, 1985, was also inserted into the record of trial. The message announces that a special order was published on 15 January, 1985, appointing Colonel F as Commander, 3d Combat Support Group, during the temporary absence of Colonel K, effective 19 January 1985. In addition, Special Order AD–8, dated 7 February, 1985, was included in the record of trial at the appropriate place. Special Order AD–8 amended Special Order AD–7 by replacing a previously appointed court member and appointing another court-member in that member's place. The signature element appearing on Special Order AD–8 shows that the change in the court membership was ordered by Colonel K.

In response to appellant's claim of error, appellate Government counsel submitted a Motion For Leave To File Documents, which we grant. One of these documents, pertinent to our inquiry, is Special Order GA–03, Headquarters Pacific Air Forces, dated 15 January, the special order alluded to in the electrical message inserted in the record of trial. Special Order GA–03 announces:

> By direction of the President, COLONEL [F], ..., is appointed Commander, 3d Combat Support Group, Clark AB, Philippines, effective 19 January 1985, during the temporary absence of Colonel [K], .... Authority: AFR 35–54.

With the issue before us in this posture we were unable to discern the authority under which Colonel K proceeded to issue Special Order AD–8 amending Special Order AD–7 and to take action on the findings and sentence in the case. As a result this Court, on 19 July, 1985, specified the following issue:

> Assuming Colonel [F] was properly appointed to command the 3d Combat Support Group on 23 January 1985, and authorized to create the special court-martial (Special Order AD–7) to try the accused, what was Colonel [K's] authority to later amend the court-martial convening order and take action on the findings and sentence in the case.

Among the responses submitted by appellate Government counsel with regard to the issue specified was a Motion For Leave To File Documents which we also grant. Included among the documents is Special Order G–80, Headquarters, 3d Combat Support Group, dated 9 September, 1985, which announces:

> Under the provisions of AFR 35–54, COL [K], ..., assumes command of the 3D COMBAT SUPPORT GROUP (PACAF), effective 28 Jan 85.

Also included among the documents filed is an affidavit of Colonel K, dated 9 September, 1985, explaining the reason behind his assumption of command effective 28 January 1985. He states he "temporarily" relinquished command on 19 January 1985, and left Clark Air Base for temporary duty at Lowry Air Force Base between 21 and 24 January, returning to Clark Air Base on 28 January to resume his command functions. He further states that due to "administrative oversight" no special order was pre-

pared announcing his assumption of command until 9 September 1985.

22 M.J. at 804–805 (footnote omitted).

---

The particular question we must address is whether Colonel David G. Kimball was empowered to act as a convening authority in this case under Article 23(a)(4).[1] The lawfulness of his actions as a convening authority in excusing one court member and appointing a new member on February 7, 1985, and in approving the findings and sentence on March 7, 1985, is challenged. Arts. 29 and 60, UCMJ, 10 U.S.C. §§ 829 and 860, respectively. The court below held that Colonel Kimball was not empowered to act as a convening authority in this case because he assumed command of the 3d Combat Support Group in violation of service regulations. *See generally* H. Moyer, *Justice and the Military* § 1–704 (1972).

We note that no question was raised at trial concerning the authority of Colonel Kimball to act in this case. Moreover, before the Court of Military Review, appellate defense counsel initially challenged the authority of Colonel Ralph B. Femrite to refer this case to trial. In any event, we do not necessarily disagree with the Court of Military Review's interpretation of Air Force Regulation 35–54, Rank, Precedence, and Command, paras. 10a(1)(a) and 18 (September 15, 1981) and AFR 10–7, Administrative Orders, para. 2–2 (September 30, 1981). We do, however, disagree with its further conclusion that Colonel Kimball was not authorized to act as a convening authority in this case.

■ The power to convene a court-martial, appoint or replace members, and approve findings and sentence is a power that Congress has traditionally reserved for command. *See* W. Winthrop, *Military Law and Precedents* 65–68 (2d ed. 1920 Reprint); G. Davis, *A Treatise on the Military Law of the United States* 18–19 (3d ed. 1913). Its concern is not technical, but functional, because military justice plays an important role in the readiness of our servicemembers to wage war. *See United States v. Kugima*, 16 U.S.C.M.A. 183, 186, 36 C.M.R. 339, 342 (1966); *United States v. Bunting*, 4 U.S.C.M.A. 84, 88, 15 C.M.R. 84, 88 (1954). In such a context, we are not justified in attaching jurisdictional significance to service regulations in the absence of their express characterization as such by Congress. *E.g.*, Art. 23(a)(7).[2] *See United States v. Greenwell*, 19 U.S.C.M.A. 460, 463, 42 C.M.R. 62, 65 (1970); *United States v. Ortiz*, 16 U.S.C.M.A. 127, 36 C.M.R. 283 (1966); *United States v. Ortiz*, 15 U.S.C.M.A. 505, 36 C.M.R. 3 (1965).

■ There is no question as a matter of fact that Colonel Kimball was functioning as the Commander of the 3d Combat Support Group on the dates he acted as the convening authority in this case. *Cf. United States v. Kugima* and *United States v. Bunting*, both *supra*. In this regard we note that his original assignment as commander on November 19, 1984, was unchallenged and not expressly revoked by superior competent authority prior to these actions. Also, the appointment of Colonel Femrite on its face provides that it was to be effective only during the temporary absence of Colonel Kimball. Moreover, Colonel Kimball fully functioned as the commander of this group in other cases and matters upon his return to Clark Air Base on January 28, 1985. Finally, there was no

---

1. § 823. Art. 23. Who may convene special courts-martial
   (a) Special courts-martial may be convened by—
   * * * * * *
   (4) the commanding officer of a wing, group, or separate squadron of the Air Force.

2. § 823. Art. 23. Who may convene special courts-martial
   (a) Special courts-martial may be convened by—
   * * * * * *
   (7) the commanding officer or officer in charge of any other command *when empowered by the Secretary concerned.*
   (Emphasis added.)

evidence that Colonel Femrite or any other officer challenged Colonel Kimball's right to command before higher authority.

Despite this overwhelming evidence of command authority, the Court of Military Review concluded that Colonel Kimball was not empowered to act as convening authority because he did not assume command in accordance with certain service regulations. *See* R.C.M. 504(b)(2) and Discussion, R.C.M. 504(b)(1), Manual for Courts-Martial, United States, 1984; paras. 5*a* (5) and 5*b* (2), Manual for Courts-Martial, United States, 1969 (Revised edition). While these regulations may have been violated and his return to command irregular in form, the import of these irregularities pales before the above-noted evidence that Colonel Kimball commanded this air group. Article 23(a)(4), unlike Article 23(a)(7), reflects Congress' concern for the realities of command, not the intricate dictates of service regulations. *See also United States v. Kalsheuer, supra.* Accordingly, the statutory requirement for jurisdiction was satisfied, and this court-martial was lawful. *See generally McClaughry v. Deming,* 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902); *Runkle v. United States,* 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887). The certified question is answered in the affirmative.

The decision of the United States Air Force Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for further review.

Judge COX concurs.

EVERETT, Chief Judge (concurring):

On a matter concerning interpretation of Air Force Regulations like those involved in this case, I attach a strong presumption of correctness to the conclusion of the judges of the Air Force Court of Military Review. Those judges have the benefit of extensive military and legal experience and are familiar with the drafting and construction of such directives. However, although I assume that their view of the Air Force Regulations was correct, I agree with the majority opinion that the real issue is who actually functioned and was recognized as commander at the time of the relevant events. *Cf. United States v. Kalscheuer,* 11 M.J. 373 (C.M.A.1981). This undoubtedly was what Congress had in mind when it empowered certain "commanding officer[s]" to convene courts-martial. Arts. 22–24, Uniform Code of Military Justice, 10 U.S.C. §§ 822–824, respectively.

If the issue had been raised at trial, I might be more sympathetic to the accused's cause. *See United States v. Ridley,* 22 M.J. 43, 48 (C.M.A.1986). However, omissions in documentation and noncompliance with procedures for assuming command, which initially went unnoticed and only came to light later, should not vitiate action taken in good faith by officers who, at the time, were *de facto* commanders.