**UNITED STATES, Appellee,**

**v.**

**Earskin SLOAN, Sergeant Major (Ret.), U.S. Army, Appellant.**

No. 66,785.
CM 9000288.

U.S. Court of Military Appeals.

Argued Jan. 7, 1992.

Decided Aug. 14, 1992.

For Appellant: *Captain Mark L. Toole* (argued); *Colonel Robert B. Kirby, Lieutenant Colonel James H. Weise, Captain James M. Heaton* (on brief).

For Appellee: *Captain Steven M. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Captain Timothy W. Lucas* (on brief).

### Opinion of the Court

WISS, Judge:

At his general court-martial, appellant—a retired sergeant major—pleaded guilty to charges of carnal knowledge and committing indecent acts with a child, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. Thereafter, the military judge sentenced appellant to a bad-conduct discharge, confinement for 3 years, and reduction to private (E–1). Acting pursuant to a pretrial agreement, the convening authority approved these results except for the punitive discharge. The Court of Military Review affirmed the findings and the approved sentence without opinion.

This Court granted review of these three issues:

### I

WHETHER THE CONVENING AUTHORITY ABUSED HIS DISCRETION BY FAILING TO SPECIFY REASONS FOR DENIAL OF APPELLANT'S REQUEST FOR DEFERMENT OF CONFINEMENT, AND BY FAILING TO GRANT APPELLANT'S REQUEST FOR DEFERMENT OF CONFINEMENT WHERE SIGNIFICANT INTERESTS IN FAVOR OF DEFERMENT OUTWEIGHED ANY INTERESTS IN APPELLANT'S CONTINUED CONFINEMENT.

### II

WHETHER THE COURT–MARTIAL LACKED JURISDICTION BECAUSE THE SECRETARY OF THE ARMY WITHHELD THE AUTHORITY TO REFER CASES INVOLVING RETIREES TO TRIAL, AND THE RECORD OF TRIAL LACKS INDICATION THAT SUCH APPROVAL WAS CONFERRED.

### III

WHETHER APPELLANT'S RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BECAUSE THE CONVENING AUTHORITY FAILED TO COMPLY WITH ADMINISTRATIVE PROCEDURES DESIGNED TO PROTECT RETIREES AND SOLDIERS CONVICTED IN THE CIVILIAN COMMUNITY.

Additionally, we specified the following issue for review:

WHETHER, AS A RETIRED MEMBER, APPELLANT MAY BE LAWFULLY REDUCED IN RANK EITHER BY THE COURT–MARTIAL OR BY OPERATION OF LAW. *SEE UNITED STATES v. ALLEN, pet. gr.* 32 MJ 222 (CMA 1990).

Careful consideration of these issues in light of the facts of this case as well as controlling legal principles and precedent, leads us now to conclude that no prejudicial error remains to be cured as to the first issue and that there is no merit in the other two issues raised by appellant. We hold, however, that appellant is entitled to relief in his sentence in connection with the specified issue. *See United States v. Allen,* 33 MJ 209, 216–17 (CMA 1991).

### I

Appellant was alleged to have committed the charged misconduct over the course of several years prior to his retirement from active duty on August 31, 1989. His actions first came to light in May of that year, and charges were preferred against him on July 31. Some efforts were made to revoke appellant's retirement orders pending resolution of these charges; ultimately, however, those efforts fell short, and appellant retired as scheduled.

Nonetheless, processing of the charges continued. *See* Art. 2(a)(4), UCMJ, 10 USC § 802(a)(4). The charges were referred to

a general court-martial on October 30, 1989. The court first convened on December 13 and ultimately adjourned on January 24, 1990.

After he had announced his sentence at the end of the last session, the military judge recommended that the convening authority suspend the entire period of confinement. Among other factors in support of his recommendation, the military judge noted that appellant was "in an on-going" course of therapy, that he had achieved some reconciliation with his daughter (the victim) and his wife, and that his income was necessary to support the family.

Immediately after trial, appellant requested deferment of confinement pending the convening authority's action. He argued that deferment was appropriate and, further, that it was logical in light of the military judge's recommendation that the convening authority suspend the confinement in his action. He reasoned that, if the convening authority ultimately were to follow this recommendation, it would have made little sense—and, indeed, it would have been contrary to the reasons supporting the suspension—for appellant to have been confined in the interim.

Nonetheless, without citing any reasons for his decision, the convening authority disapproved the request for deferment. Moreover, as noted earlier, the convening authority approved the confinement portion of the sentence in his subsequent action on February 15, 1990.[1]

## II

Now, appellant contends that the convening authority erred when he failed to explain, in writing, his reasons for denying deferment. *See* RCM 1101(c)(3), Manual for Courts–Martial, United States, 1984. He contends, as well, that the decision to deny deferment was an abuse of discretion. *See United States v. Brownd*, 6 MJ 338,

339 (CMA 1979). As a remedy, appellant asks "that this Court reverse the court below and restore all rights, privileges, and property of which appellant has been deprived of [sic] by virtue of the convening authority's ill-advised [in]action in this case." Final Brief at 9. We decline to do so.

### A

■ There can be little legitimate doubt that the convening authority erred in *summarily* denying appellant's deferment request. *United States v. Brownd, supra; see Henderson v. Brinkman*, 15 MJ 57 (CMA 1982). RCM 1101(c)(3) provides that the convening authority's decision on a deferment request "shall be subject to judicial review only for abuse of discretion." In an obvious effort to effectuate that review, the rule immediately thereafter prescribes that "[t]he action of the convening authority [on such a request] *shall be written and a copy shall be provided to the accused.*" (Emphasis added.)

If it be suggested that this requirement of a written action may not embrace a requirement that the writing include the *reasons* for the action, one might ask rhetorically how a court of military review or this Court could measure an abuse of discretion if the basis for the exercise of that discretion is unknown. · *See Henderson v. Brinkman, supra*. Indeed, the drafters of RCM 1101(c)(3) expressly admonish that, "[b]ecause the decision to deny a request for deferment is subject to judicial review, the basis for denial should be included in the record." Drafters' Analysis to RCM 1101(c)(3), Manual, *supra* at A21–69.

■ Judicial review is not an exercise based upon speculation, and we will not permit convening authorities to frustrate the lawful responsibility of the courts of

---

1. On October 11, 1990, appellant filed a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus before the Court of Military Review, challenging the refusal to grant deferment, but that court denied the petition on October 16. This Court denied appellant's writ-appeal petition for review of that decision on December 11. *Sloan v. Wishart*, 32 MJ 238 (CMA 1990).

military review and this Court that was clearly articulated as early as *Brownd* in 1979. If there has been any doubt in any quarter before, let us now resolve it: When a convening authority acts on an accused's request for deferment of all or part of an adjudged sentence, the action must be in writing (with a copy provided to the accused) and must include the reasons upon which the action is based.[2]

### B

■ At this point, however, we are unable to discern any relief to which appellant might be entitled. Unlike the situation presented to the Army Court of Military Review in *Longhofer v. Hilbert*, 23 MJ 755 (1986), in which the petitioner had requested deferment of confinement *pending appeal of his conviction*, appellant requested deferment only until such time as the convening authority *acted on his sentence*—which, of course, is the point at which the convening authority would consider the military judge's recommendation for suspension of confinement. Inasmuch as the convening authority ultimately *approved* the adjudged confinement *without* suspending it, the deferment would have expired on the date of that action—February 15, 1990—and he would have begun service of the confinement at that point, anyway.

In other words, the prejudice to appellant under either of his theories set forth at the beginning of this discussion is that he began serving his confinement on January 24, 1990, instead of on February 15, 1990. Accordingly, any prayer for relief from denial of this delay became moot on February 15. There simply are no "rights, privileges, and property of which appellant has been deprived of [sic] by virtue of the convening authority's ill-advised [in]action in this case" that any longer might be restored.

### III

■ In the second granted issue, appellant asserts that his court-martial lacked *in personam* jurisdiction over him, as a retiree, "because the Secretary of the Army withheld the authority to refer cases involving retirees to trial, and the record of trial lacks indication that such approval [by the Secretary] was conferred." Putting his contention in perspective, appellant forthrightly acknowledges in his brief in this Court that "[t]he issue involved here is not whether jurisdiction exists to try retirees at courts-martial; that issue has consistently been resolved in the affirmative by the Court of Military Appeals," citing *Pearson v. Bloss*, 28 MJ 376 (CMA 1989), and *United States v. Overton*, 24 MJ 309(CMA), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). Instead, he argues that, via Army regulation and policy, "Army retirees have an additional protection not afforded the retirees from the other services. Without the approval of HQDA [Headquarters, Department of the Army], the convening authority ... had no authority to refer appellant's case to court-martial." Final Brief at 11–12. We disagree.

According to RCM 401(a), "A superior competent authority may withhold the authority of a subordinate to dispose of charges in individual cases, types of cases, or generally." *Accord* RCM 306(a). Pointing to a sentence in paragraph 5–2*b* (3), Army Regulation (AR) 27–10, Military Justice, appellant argues that that is precisely what has been done as to Army retirees. That paragraph reads as follows:

(3) *Retirees.* Retired members of a regular component of the Armed Forces who are entitled to pay are subject to the UCMJ (Art. 2(a)(4)). They may be tried by courts-martial for offenses committed while in a retired status. Department of the Army policy provides that retired personnel subject to the Code will not be tried for any offense by any courts-martial unless extraordinary circumstances

---

**2.** Assuming that the convening authority performs his lawful responsibility of consciously weighing all relevant considerations on both sides of the deferment question (*see* RCM

1101(c)(3), Manual for Courts–Martial, United States, 1984, for an extensive list of some suggested factors), it would not seem to be a burdensome task to articulate his conclusions.

are present. *Prior to referral of courts-martial charges against retired soldiers, approval will be obtained from HQDA (DAJA–CL).* If necessary to facilitate courts-martial action, retired members may be ordered to active duty. Requests for active duty will be forwarded by electronic message through the Criminal Law Division, Office of The Judge Advocate General [ (DAJA–CL) ], to the Office of the Assistant Secretary of the Army (Manpower and Reserve Affairs) for approval.

(Emphasis added). The reasoning reflected in this regulation is clear: Retirees *statutorily* are subject to the UCMJ and may be tried for violations of the Code, even when those violations occur while in a retired status;[3] however, Army *policy* is that such retirees will *not* be tried by court-martial in the absence of extraordinary circumstances; and, in order to effectuate this policy, an Army *regulation* prescribes that charges against retirees will not be referred to courts-martial without prior approval at Department of the Army level.

This regulatory provision was issued as a change to AR 27–10 on December 22, 1989; it was not effective, however, until January 25, 1990—the day *after* appellant's court-martial ended. Inferentially acknowledging the force of the Government's argument that, accordingly, this regulatory demand for secretarial approval does not apply to appellant's trial, appellant submits that the paragraph quoted above "is a codification of the pronounced Army *policy* that had its inception in an opinion of the Judge Advocate General of the Army dated 29 June 1956. *See* JAGJ 1956/4914, 29 June 1956, subject: Retired Persons, *as* digested in* 7 Dig. Ops. JAG [Courts–Martial] § 45.8 (1957–58)." Final Brief at 10 (emphasis added). Thus, appellant asks this Court to give force and effect of law to this long-standing policy.

§ 45.8 of the Digested Opinions, relied upon by appellant, states:

It is Department of the Army policy that retired personnel subject to the Code will not be tried for any offenses by any military tribunal unless extraordinary circumstances are present linking them to the military establishment or involving them in conduct inimical to the welfare of the nation....

\* \* \*

Prior to the exercise of general court-martial jurisdiction over a retired person subject to the Code, approval of the Department of the Army should be obtained. If jurisdiction is to be exercised, however, it should, as a policy matter, be accompanied by a recall of the accused to active duty.

7 Digest of Opinions, JAG at 108 (1957–58).

▮ Appellant's argument, however, contains a number of difficulties. First, while the Digest of Opinions purports to *reflect* Army policy, it does *not* purport to *announce* policy. Yet, appellant has not cited us to any source in which a formal statement of Department of the Army policy consistent with the above language may be found. If such a formal policy did exist, it is the responsibility of this Court to interpret and, if appropriate, to apply that policy; we are not obliged simply to accept someone else's interpretation—even that of the Judge Advocate General. *See general-*

---

**3.** This paragraph is confusing in this respect: It contains a sentence that expressly states that jurisdiction exists to try offenses committed while in retired status, but it does not contain any other language that expresses or implies that jurisdiction exists, as well, to try offenses committed while on active duty, before the member entered retired status. This circumstance might be interpreted in either of two ways: (1) This sentence indicates that the whole paragraph applies only to trials of offenses committed in retired status, so the procedures set out there do not apply to trials of offenses that were committed while on active duty; or (2) the paragraph applies to all trials of retirees for whatever offenses, and the sentence is there only to expressly make clear that offenses committed while in retired status may be tried by court-martial.

In light of the regulation as a whole, we think that logic suggests the latter, but for present purposes we need not decide the matter—we will assume the latter interpretation, which is more favorable to appellant's appeal than is the former.

ly *Immigration and Naturalization Service v. Cardoza–Fonseca,* 480 U.S. 421, 445–48, 107 S.Ct. 1207–22, 94 L.Ed.2d 434 (1987); *Castillo–Felix v. Immigration and Naturalization Service,* 601 F.2d 459 (9th Cir.1979); *Christianson v. City of Bismark,* 476 N.W.2d 688, 691 (N.D.1991); *York v. Commonwealth,* 815 S.W.2d 415, 417 (Ky.App.1991); *State ex rel. Holecek v. Ross,* 472 N.W.2d 185, 186 (Minn.App. 1991).

Second, if it was the Judge Advocate General himself who created this policy, then the policy would not seem to be effective as a limitation on the exercise of court-martial jurisdiction under present-day rules. RCM 401 acknowledges that "[a] superior competent authority may withhold the" power "of a subordinate to dispose of charges," but appellant has cited us no authority—and we know of none—that the Judge Advocate General is such an "authority." Indeed, that view would seem inimical to the fiber of the military justice system in which *commanders,* not lawyers, exercise court-martial jurisdiction. *See* RCM 306(a) and 401(a).

■ Third, accepting, for purposes of this discussion, that some policy, as reflected in the quoted Digest of Opinions, did exist, *policy* typically is not *law. See United States v. Stokes,* 12 M.J. 229, 231 (CMA 1982)[4]. Moreover, even a *regulation*—which, as a general rule, often is said to bind the authority that promulgates it, *see United States v. Dunks,* 1 M.J. 254, 255 (CMA 1976)—may be asserted by an accused only if it was prescribed to protect an accused's rights. *See United States v. McGraner,* 13 M.J. 408, 415–18 (CMA 1982), citing and discussing *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Here, it seems most likely that the policy was promulgated primarily for the purpose of assuring efficient allocation of prosecutorial resources by pursuing military-justice alternatives only when courts-martial—as opposed to some other remedy, such as civilian trial—is logically compelling.

Finally, the Digest of Opinions quoted earlier speaks in terms of undefined "extraordinary circumstances" and sets out what "should" be done. Thus, assuming that the quoted material accurately reflects some authoritative policy, the policy is by its own terms hortatory, rather than mandatory.

Accordingly, whatever force of law might exist as to paragraph 5–2*b* (3) of AR 27–10, as of the effective date of January 25, 1990,[5] any preexisting "policy" that is reflected in the quoted Opinion of The Judge Advocate General carries no such weight.

IV

In support of his third issue, appellant at the outset essentially reargues the same position that he asserted as to the previous issue. Additionally, however, appellant contends that he was denied procedural due process of law because the general court-martial convening authority did not personally determine that appellant's court-martial was necessary to the well-being of the command in view of a civilian conviction for the same misconduct 2 days before his court-martial.

To understand the flaws in appellant's argument, it is necessary to set out in full context the pertinent part of AR 27–10 (18 March 1988) on which appellant relies. Chapter 4, entitled "Disciplinary Proceedings Subsequent to Exercise of Jurisdiction by Civilian Authorities," reads as follows:

4–1. *General*

This chapter covers *policies* on disciplinary proceedings under the UCMJ against persons who *previously have been tried* within the meaning of Arti-

---

4. "Policy. The *general principles* by which a government is *guided* in its management of public affairs, or the legislature in its measures." *Black's Law Dictionary* 1157 (6th ed.1990) (emphasis added).

5. *Compare United States v. Arguello,* 29 MJ 198 (CMA 1989), *with United States v. Stokes,* 12 MJ 229, 231 (CMA 1982), and *United States v. McGraner,* 13 MJ 408, 415–18 (CMA 1982).

cle 44, UCMJ, in a civilian court deriving its authority from a State of the United States or a foreign country.

4-2. *Policy*

A person subject to the UCMJ *who has been tried in a civilian court* may, but *ordinarily* will not be tried by court-martial or punished under Article 15, UCMJ, for the same act over which the civilian court has exercised jurisdiction.

4-3. *Procedure*

Subject to provisions of applicable international agreements on US forces stationed in foreign countries, an officer exercising GCM jurisdiction may authorize disposition of a case under the UCMJ and the MCM despite a previous trial. *The officer must personally determine that authorized administrative action alone is inadequate and punitive action is essential to maintain discipline in the command,* provided the case is processed as follows:

\*     \*     \*

b. When the officer exercising SCM jurisdiction over the offender determines that trial by court-martial is required, a full written report to include charge sheets will be forwarded through channels, to the officer exercising GCM jurisdiction. *The officer exercising GCM jurisdiction may, at that officer's discretion, dispose of such charges* or, by indorsement, authorize a subordinate to take such action.

(Emphasis added).

We note, first, that this chapter articulates a policy of prosecutorial restraint, and it is far from clear that appellant is entitled to claim any protective benefit under its provisions. *See United States v. Stokes, supra; see also United States v. McGraner, supra.* Of course, appellant's argument is somewhat more limited: Essentially, he asserts that he has a due process right to the Government's adherence to the procedure set out in paragraph 4-3 as a predicate to exercising its prosecutorial discretion.

In this regard, it must be remembered that appellant's civilian trial did not occur until 2 days prior to his court-martial, long after the convening authority had made his referral decision. As such, unless the policy provisions set out earlier can be stretched to insist that a convening authority has a *continuing* responsibility—*after* he has made his decision to dispose of charges by referring them to a court-martial—to interrupt the subsequent implementation of that decision and to exercise his prosecutorial discretion anew, appellant's factual basis to assert his claim is infirm. At the time that the general court-martial convening authority made his decision to refer the instant charges to court-martial, appellant simply was not a person who *already* had been tried by a civilian court for the same misconduct that was the subject of those charges.

Further, even assuming that the convening authority was aware when he referred these charges that criminal action was being pursued in the civilian courts and that the regulation might be read to reflect some sort of conceptual obligation to consider that factor prior to making his referral decision, there is no indication in the record that he did not do so. Quite clearly, appellant *disagrees* that his court-martial was "essential to maintain discipline in the command," but his disagreement with the discretionary prosecutorial *decision* does not alone support his logical leap that he was denied due process in the *reaching* of that decision.

Moreover, as the Government points out, the convening authority—in responding to appellant's *post-trial* submissions prior to taking his action on the court-martial—stated:

I considered the civil conviction and believe that the civilian authorities did what they believed to be in the best interests of justice, which I must also do—independently and impartially. I again considered the fact that the crimes were committed while he served in the Army's highest enlisted rank.

If the civilian conviction expressly did not affect the convening authority's decision to affirm the court-martial results, it seems unlikely that—had that conviction occurred earlier—it would have had any effect on his referral decision.

V

█ Finally, arguing the merits of the issue specified for review by this Court pursuant to *United States v. Allen*, 33 MJ 209 (CMA 1991), appellant points out that he was tried as a *retired* member, not as a member recalled to active duty. As such, he asserts that our decision in *Allen* is dispositive in his favor.

The Government acknowledges that this Court in *Allen* "examined the same issue as here and determined that a retired member could not be reduced by court-martial or by operation of Article 58a, UCMJ." Answer to Final Brief at 18. Although "[t]he Government respectfully disagrees" with *Allen, id.* at 19, and argues that it should be overturned, we decline to do so.

A

The Government reminds us that this Court cited 10 USC § 6332 in support of our observation that "a transfer of a [Naval retiree] to the retired list is conclusive in all aspects as to grade and rate of pay based on his years of service." *United States v. Allen, supra* at 216. After noting that this statute applies only to Navy personnel and not to the Army, and after representing that "the Government has been unable to locate sections [of the United States Code] having similar application for Army personnel," the Government indicates that it relies in its brief "on case law and Army regulations to respond to the 'conclusive' nature of retired rank" in the Army. Answer to Final Brief at 19 n.11.

Of course, as *Allen* itself clearly reflects, our decision there was not dependent solely upon this statutory provision; rather, that authority was among others that served as the foundation of our holding. Without embarking upon a detailed analysis of the Government's argument—which we are not inclined to do, for reasons that will be clear shortly—we do pause to note that the Government's position may be reduced to two contentions.

First, the Government asserts that AR 635–200 "makes allowances for a reduction in grade." Answer to Final Brief at 25. Specifically, the Government cites the following language from paragraph 12–18c of that regulation: "Once an order [of retirement] has been issued, it will not be *amended* or revoked except for extreme compassionate reasons, *the definitely established convenience of the Government,* or when a change in the soldier's status prevents retirement on the specific date." (Emphasis added.) Relying upon the emphasized portion, the Government asserts, "This indicates that the retirement order may be amended to reflect a reduction in rank as a result of a court-martial sentence." Answer to Final Brief at 25 n. 12. The logic of this inference seems to us to be less than compelling.

Second, the Government contends that money received by retirees is not a pension—it is not, as the Government puts it, "salary recompense for past services." *Id.* at 26. Rather, the Government contends, it "is a continuation of active pay on a reduced basis." *Id.* at 23 (emphasis omitted). The Government then explains: "Even though an officer is retired from active duty and is receiving retirement pay, he is still subject to call to active duty as long as his physical condition will permit." *Id.* at 23. As noted in *United States v. Allen, supra* at 216, this distinction is not particularly helpful in determining the scope of court-martial sentencing power over retired servicemembers.

B

We make these cursory observations only as a reminder that, in addition to the statutory provision cited in *Allen* that uniquely applies to the Navy, there are other sound underpinnings of that decision.

*See, e.g.,* 5 USC § 8312.[6] *Allen* is not, in other words, a decision that is feebly supported. Accordingly, whatever may be the merit of the Government's argument in support of a contrary position, the interests of *stare decisis* in a decision of such recent vintage is more weighty.

## VI

The decision of the United States Army Court of Military Review is reversed as to sentence to the extent that it approved a reduction in rank. The reduction in rank is set aside. All rights, privileges, and property of which appellant has been deprived by virtue of that portion of his sentence so set aside are hereby ordered restored. In all other respects, the decision below is affirmed.

SULLIVAN, Chief Judge (concurring):

I join the principal opinion today in its decision not to overturn that portion of *United States v. Allen,* 33 M.J. 209 (CMA 1991), concerning the reduction in grade and pay of court-martialed retired members. However, I am not adverse to revisiting this issue in a Navy case. As for appellant, I think that, as a matter of constitutional law and codal intent, he is entitled to equal treatment. U.S.Const.amend. V. *See United States v. Morris,* 24 M.J. 93, 95 n. 3 (CMA 1987). *See* Art. 36(b), Uniform Code of Military Justice, 10 USC

§ 836(b). *See generally United States v. McGraner,* 13 M.J. 408, 418 (CMA 1982).

COX, Judge (concurring with reservations):

I write only to express my views on Part II of the principal opinion.

The decision to defer a sentence is within the *sole* discretion of the convening authority. Art. 57(d), Uniform Code of Military Justice, 10 USC § 857(d). The decision, however, is subject to review for abuse. *United States v. Brownd,* 6 MJ 338 (CMA 1979); *Longhofer v. Hilbert,* 23 M.J. 755 (ACMR 1986), *writ appeal pet. denied,* 24 MJ 62 (CMA 1987).

I disagree that the convening authority abuses his discretion, thereby committing appellate error, by "fail[ing] to explain, in writing, his reasons for denying deferment." Op. at 6. Although a written explanation is nice to have, there is no "mandate" in *Brownd* which would equate reversible error to failure to state reasons in writing for denying deferment.

However, in any event, as this case succinctly demonstrates (as did *United States v. Brownd, supra*), an appeal is not the proper forum to litigate the issue of deferment. By the time the appeal gets to us, the question of deferment is moot. If a prisoner contends that a convening authority has abused his or her discretion in refusing to defer the sentence to confinement, then the appropriate remedy is to

---

**6.** Though the dissenting opinion suggests that this statutory provision is broadly ranging and, in the process, is more invasive of the right to continued retired pay than is the Uniform Code of Military Justice, that implication is misleading. 5 USC § 8312 prohibits payment of annuity or retired pay to an individual who is convicted of certain specifically delineated crimes, most of which are in the civilian titles of the United States Code. This provision does, as well, specifically include convictions for offenses under the UCMJ; but it expressly includes convictions under the UCMJ only for a *narrow* class of offenses. That is, 5 USC § 8312 permits forfeiture of annuity or retired pay for convictions by courts-martial only if the offenses involve such misdeeds as aiding the enemy, spying, treason, sedition, and other like offenses that relate to undermining the very government from whom

the accused would purport to receive retired pay, as well as perjury or subornation of perjury. *See* 5 USC § 8312(b)(2) and (c)(2). Appellant was convicted of none of the offenses included under this statute.

As to the dissenter's discussion of *United States v. Hooper,* 9 USCMA 637, 26 CMR 417 (1958), and subsequent related litigation, I point out that *Hooper* primarily addressed whether there was court-martial jurisdiction to try Admiral Hooper, as a retired officer; only incidental thereto did the cases affect Hooper's entitlement to continued rank and pay. Here, there is no question under Article 2, UCMJ, 10 USC § 802, of the jurisdiction to try appellant, but his entitlement to retention of rank and pay is squarely in issue. Thus, the probative value of the *Hooper* litigation on the question before us here and in *Allen* is dubious.

file a Petition for *Habeas Corpus, see Longhofer v. Hilbert, supra,* or to seek a review of the decision *de novo* as Judge Crawford suggests in her separate opinion. Therein, the prisoner can set forth his reasons why he should be released from confinement pending appeal (or for whatever length of time he is seeking to have his sentence to confinement deferred), the Government can respond, and an appellate court can determine if discretion has been abused in time to provide a viable remedy.

Otherwise, I concur.

CRAWFORD, Judge: (concurring with reservations and dissenting in part):

I concur with Judge Wiss on Parts I, III, and IV and agree with Judge Gierke as to the disposition of the specified issue (Part V). I also write separately on Part II.

After trial the accused may make an application in writing directly to the convening authority to defer a sentence to confinement. The decision of the convening authority whether to grant or deny the application is within the convening authority's "sole discretion." Art. 57(d), Uniform Code of Military Justice, 10 USC § 857(d). Contrary to this explicit Act of Congress, RCM 1101(c)(3), Manual for Courts-Martial, United States, 1984, purports to make the convening authority's action subject to judicial review for "abuse of discretion." RCM 1101(c) does not require the convening authority to specify the reasons for denying the deferment. However, the drafters of the rule sought to impose this requirement, stating: "Because the decision to deny requests for deferment is subject to judicial review, the basis for denial should be included in the record." Drafters' Analysis, Manual, *supra* at A21–69. Presumably, this requirement is set forth to prevent the convening authority from setting forth reasons many months after the decision. When the defense seeks relief from a denial of deferment and sets forth reasons why deferment should have been granted, I agree that it is preferable for the convening authority to establish the basis for denial. However, I do not think it is within

our supervisory powers to require the convening authority to set forth these reasons in the first instance absent a statutory or Manual requirement for doing so.

GIERKE, Judge (concurring in part and dissenting in part):

I agree with Judge Wiss' disposition of the granted issues, but I disagree with his disposition of the specified issue regarding the authority of a court-martial to reduce a retired enlisted member of the Army.

In *United States v. Allen,* 33 MJ 209 (CMA 1991), relied on by Judge Wiss to resolve the specified issue, we held that a retired senior chief petty officer of the Navy could not be administratively reduced by the convening authority pursuant to Article 58a, Uniform Code of Military Justice, 10 USC § 858a. I do not believe that *Allen* controls a case involving a retired member of the Army. The *Allen* decision was based on 10 USC § 6332, a statute which applies only to "a member of the naval service." In *Allen* we observed that

the historic practice of the Army (and the Air Force) was to reduce a noncommissioned officer to the ranks following a conviction, because the retention in the higher grade was deemed to undermine the status of the noncommissioned officer corps. W. Winthrop, *Military Law and Precedents* 431 (2d ed. 1920 Reprint). This remains the practice in the Army and Air Force....

Such was not the tradition of the sea services, however. In fact the Secretary of the Navy exempted the Naval Service from the automatic reduction directed by paragraph 126*e,* Manual for Courts-Martial, United States, 1951....

33 MJ at 216.

Furthermore, the *Allen* case involved an "administrative" reduction pursuant to Article 58a, whereas appellant's case involves a reduction in grade imposed as punishment by a court-martial. Article 58a applies to the convening authority and, by its terms, may be abrogated "in regulations to be prescribed by the Secretary concerned." Appellant's reduction in grade was imposed

14

by the court-martial for violations of Article 120, UCMJ, 10 USC § 920, which applies to "[a]ny person subject to this chapter" and authorizes punishment "as a court-martial may direct," and Article 134, UCMJ, 10 USC § 934, which applies to "persons subject to this chapter" and authorizes punishment "at the discretion of that court." In their extensive briefs and oral arguments, counsel have been unable to direct this Court to any statute applicable to members of the Army which parallels 10 USC § 6332. *See* Art. 18, UCMJ, 10 USC § 818, which allows a general court-martial to "adjudge any punishment not forbidden *by this chapter*." (Emphasis added.)

Application of *Allen* to appellant's case extends a statute applicable only to the naval service to a member of the Army. This is a proper function of Congress, not this Court.

Although Judge Wiss, writing for the majority, cites 5 USC § 8312 in support of his position that Congress intended to protect retired pay from being diminished by a court-martial sentence, the statute actually supports the opposite conclusion, because it strengthens the provisions for terminating retired pay for misconduct. Unlike the applicable provisions of the UCMJ, 5 USC § 8312(b)(2)(A) mandates termination of retired pay upon conviction of certain offenses, even if the sentence does not include dismissal or punitive discharge. Furthermore, termination of retired pay occurs upon conviction rather than, as under the UCMJ, upon completion of appellate review.

Finally, assuming *arguendo* that *Allen* is controlling precedent for appellant's case, I suggest that *Allen* may deserve a second look. After enactment of 10 USC § 6332, which is the underpinning of *Allen* and the majority opinion in this case, a retired Navy officer, Rear Admiral Hooper, was tried in his retired status pursuant to Article 2(a)(4), UCMJ, 10 USC § 802(a)(4). He was convicted and sentenced to dismissal and total forfeitures. Twice he unsuccessfully challenged the jurisdiction of a court-martial to try a retired Navy officer. *United States v. Hooper*, 9 USCMA 637, 26 CMR 417 (1958); *Hooper v. Laird*, 19 USCMA 329, 41 CMR 329 (1970). He also sought in the Court of Claims to save his retired pay; likewise he failed. The Court of Claims held that, since he "was validly dismissed from the Navy, his entitlement to retired pay no longer exists." *Hooper v. United States*, 164 Ct.Cl. 151, 326 F.2d 982, 988, *cert. denied*, 377 U.S. 977, 84 S.Ct. 1882, 12 L.Ed.2d 746 (1964). As recently as 1981, the Supreme Court cited *Hooper* with approval for the proposition that a retiree "may forfeit all or part of his retired pay if he engages in certain activities," including activities subjecting him to trial by court-martial. *McCarty v. McCarty*, 453 U.S. 210, 222 and n. 14, 101 S.Ct. 2728, 2736 and n. 14, 69 L.Ed.2d 589. I suggest that 10 USC § 6332 was never intended to limit the jurisdiction of courts-martial to impose punishments authorized under the Code.

I would affirm the decision of the United States Army Court of Military Review.