**UNITED STATES, Appellee**

v.

**Kevin M. KOHUT, Machinist's
Mate Fireman Apprentice
U.S. Navy, Appellant.**

No. 95–0375.
Crim.App. No. 93 1829.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 4, 1996.

Decided July 30, 1996.

For Appellant: *Lieutenant Commander Eric C. Price*, JAGC, USN (argued).

For Appellee: *Colonel Charles William Dorman*, USMC (argued); *Colonel J. Composto*, USMC, *Commander S.A. Stallings*, JAGC, USN, *Lieutenant R.W. Sardegna*, JAGC, USNR (on brief); *Major William F.L. Rodgers*, USMCR.

*Opinion of the Court*

SULLIVAN, Judge:

On April 27, 1993, appellant was tried by a special court-martial composed of a military judge sitting alone at the Naval Base, Philadelphia, Pennsylvania. Pursuant to his pleas, he was found guilty of unauthorized absence (100 days); failure to obey a lawful general order prohibiting underage drinking; drunk driving; assault with a means likely to produce death or grievous bodily injury (2 specifications); and breaking restriction, in violation of Articles 86, 92, 111, 128, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 892, 911, 928, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $500.00 pay per month for 5 months, and reduction to pay grade E-1. The convening authority, Commanding Officer, USS FORRESTAL (AVT 59), approved this sentence on August 10, 1993, but he suspended for 12 months confinement in excess of 120 days. On November 29, 1994, the Court of Criminal Appeals affirmed the findings of guilty and the sentence as approved by the convening authority. 41 MJ 565, 570.

■ On March 21, 1995, this Court granted review of the following issue:

WHETHER THE LOWER COURT ERRED IN FINDING APPELLANT'S COURT–MARTIAL HAD JURISDICTION TO ENTER FINDINGS AS TO TWO SPECIFICATIONS OF AGGRAVATED ASSAULT WHERE THESE OFFENSES, HAVING BEEN PREVIOUSLY DISPOSED OF IN A STATE COURT, WERE REFERRED TO A SPECIAL COURT–MARTIAL WITHOUT PRIOR APPROVAL OF THE JUDGE ADVOCATE GENERAL AS REQUIRED BY DEPARTMENT OF THE NAVY REGULATIONS.

We hold that the convening authority in this case had jurisdiction under Article 23, UCMJ, 10 USC § 823, to lawfully convene appellant's special court-martial. *See United States v. Sloan,* 35 MJ 4 (CMA 1992), and *United States v. Jette,* 25 MJ 16 (CMA 1987).

The facts and circumstances surrounding the granted issue were noted by the Court of Criminal Appeals as follows:

During the presentencing part of the appellant's court-martial, the parties entered into an oral stipulation of fact which revealed that both assaults to which the appellant had just pled guilty had previously been the subject of a state criminal proceeding. The stipulation indicated that the appellant was arrested in Florida on 8 September 1992 for aggravated battery as a result of striking two individuals, a sailor and the sailor's brother, with an aluminum baseball bat. He was confined in the Escambia County Jail, Florida, from the time of his arrest until 1 October 1992, when his case was handled through a pretrial diversion program. Record at 55; Appellate Ex. V.

\* \* \*

The appellant now contends ... that the court-martial did not have jurisdiction over Additional Charge II and the specifications thereunder dealing with the assaults, citing § 0124 of the JAGMAN [Manual of the Judge Advocate General of the Navy]. He contends that under § 0124, the Secretary of the Navy has withheld from all convening authorities the authority to refer to court-martial charges that have already been disposed of in a state or foreign court unless permission has first been obtained from the JAG.

The Government concedes that § 0124 of the JAGMAN is applicable to appellant's case and that the convening authority did not receive permission from the JAG to refer the charge and specifications in question to a court-martial. Such a failure constitutes error. However, the Government contends that this section does not establish any jurisdictional requirement to referral and that any requirement to comply therewith was waived by the appellant's guilty pleas, and his failure to object or move for dismissal.

41 MJ at 566–67 (footnote omitted).

Section 0124, JAGMAN, JAGINST 5800.7C (Change 1, 1992), states:

**0124 EXERCISE OF COURT–MARTIAL JURISDICTION IN CASES TRIED IN DOMESTIC OR FOREIGN CRIMINAL COURTS**

a. *Policy.* When a person in the naval service has been tried in a State or foreign court, whether convicted or acquitted, or when a member's case has been "diverted" out of the regular criminal process for a probationary period, or has been adjudicated by juvenile court authorities, military charges shall not be referred to a court-martial or be the subject of nonjudicial punishment proceedings for the same act or acts, except in those unusual cases where trial by court-martial or the imposition of nonjudicial punishment is considered essential in the interests of justice, discipline, and proper administration within the naval service. Such unusual cases shall not be referred to trial by court-martial or be the subject of nonjudicial punishment proceedings without specific permission as provided below. *This policy is based on comity between the Federal Government and State/foreign Governments and is not intended to confer additional rights upon the accused.*

b. *Criteria.* Referral for trial or the imposition of nonjudicial punishment within the terms of this policy shall be limited to cases that meet one or more of the following criteria:

(1) Cases in which punishment by civil authorities consists solely of probation, and local practice, or the actual terms of probation, do not provide rigid supervision of probationers, or the military duties of the probationer make supervision impractical.

(2) Cases in which civilian proceedings concluded without conviction for any reason other than acquittal after trial on the merits.

(3) Other cases in which the interests of justice and discipline are considered to require further action under the UCMJ (*e.g.,* where conduct leading to trial before a State or foreign court has reflected adversely upon the naval service or when a particular and unique military interest was not or could not be adequately vindicated in the civilian tribunal).

c. *Procedure*

(1) *General and special courts-martial.* No case described in subsection b shall be referred for trial by general or special court-martial without the prior permission of the Judge Advocate General. For purposes of this rule, permission of the Judge Advocate General to refer charges to a court-martial includes permission for trial itself; accordingly, once permission for referral has been obtained, no additional permission is required. Requests for such permission shall be forwarded by the general court-martial authority concerned (or by the special court-martial authority concerned via the general court-martial authority) to the Judge Advocate General (via the Commandant of the Marine Corps or copy to the Commander, Naval Military Personnel Command, as appropriate). Permission of the Judge Advocate General is not required for court-martial proceedings if the civilian adjudication or diversion occurs after the military charges have been referred to a court-martial.

(2) *Summary courts-martial and nonjudicial punishment proceedings.* No case described in subsection b shall be referred for trial by summary court-martial, or be the subject of nonjudicial punishment proceedings without the prior permission of the officer exercising general court-martial jurisdiction over the command. Grants of such permission shall be reported by the general court-martial authority concerned by means of a letter addressed to the Judge Advocate General in which he shall describe the offense alleged, the action taken by civil authorities, and the circumstances bringing the case within one or more of the exceptions to the general policy. Permission of the officer exercising general court-martial jurisdiction over the command is not required for summary court-martial proceedings if the civilian adjudication or diversion occurs after the military charges have been referred to a court-martial.

(3) *Reporting requirements.* The provisions of this section do not affect the reporting requirements or other actions re-

quired under other regulations in cases of convictions of service personnel by domestic or foreign courts and adjudications by juvenile court authorities.

d. *Limitations.* Personnel who have been tried by courts that derive their authority from the United States, such as U.S. District Courts, shall not be tried by court-martial or be the subject of nonjudicial punishment for the same act or acts.

(Emphasis added.)

———

Appellant claims that his court-martial lacked jurisdiction to try him for the two assault offenses because of § 0124, JAG-MAN. *See generally United States v. Brown,* 39 MJ 114, 116 nn. 3 and 4 (CMA 1994). He asserts that this service instruction lawfully abrogated the statutory power of the convening authority to convene his

court-martial. *See generally United States v. Blaylock,* 15 MJ 190, 194 (CMA 1983).

The basis for his argument is Article 36, UCMJ, 10 USC § 836,[1] which authorizes the President to make rules of procedure at courts-martial, and Article 140, UCMJ, 10 USC § 940,[2] which permits the President to delegate and sub-delegate his authority in the Uniform Code of Military Justice. He further notes several provisions of Manual for Courts–Martial, United States, 1984, issued by the President, which purportedly permitted a superior military authority to withhold court-martial convening authority from a subordinate military authority. *See* RCM 306(a)[3] and 401(a), Manual, *supra;*[4] *see also* RCM 504(b)(1)[5] and 601.[6] Finally, he cites § 0124, JAGMAN, as a specific exercise of that withdrawal power by the Secretary of the Navy and the Judge Advocate General of the Navy, which deprived this court-martial of jurisdiction over his case.

1. **§ 836. Art. 36.  President may prescribe rules**
(a) Pretrial, trial, and post-trial procedures, including modes of proof, for cases arising under this chapter triable in courts-martial, military commissions and other military tribunals, and procedures for courts of inquiry, may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

2. **§ 940. Art. 140.  Delegation by the President**
The President may delegate any authority vested in him under this chapter, and provide for the subdelegation of any such authority.

3. **Rule 306.  Initial disposition**
(a) *Who may dispose of offenses.* Each commander has discretion to dispose of offenses by members of that command. Ordinarily the immediate commander of a person accused or suspected of committing an offense triable by court-martial initially determines how to dispose of that offense. *A superior commander may withhold the authority to dispose of offenses in individual cases, types of cases, or generally. A superior commander may not limit the discretion of a subordinate commander to act on cases over which authority has not been withheld.*
(Emphasis added.)

4. **Rule 401.  Forwarding and disposition of charges in general**
(a) *Who may dispose of charges.* Only persons authorized to convene courts-martial or

to administer nonjudicial punishment under Article 15 may dispose of charges. *A superior competent authority may withhold the authority of a subordinate to dispose of charges in individual cases, types of cases, or generally.*
(Emphasis added.)

5. **Rule 504.  Convening courts-martial**
(a) *In general.* A court-martial is created by a convening order of the convening authority.
(b) *Who may convene courts-martial.*
(1) *General courts-martial.* Unless otherwise limited by superior competent authority, general courts-martial may be convened by persons occupying positions designated in Article 22(a) and by any commander designated by the Secretary concerned or empowered by the President.
(2) *Special courts-martial.* Unless otherwise limited by superior competent authority, special courts-martial may be convened by persons occupying positions designated in Article 23(a) and by commanders designated by the Secretary concerned.

6. **Rule 601.  Referral**
(a) *In general.* Referral is the order of a convening authority that charges against an accused will be tried by a specified court-martial.
*    *    *    *    *    *
(b) *Who may refer.* Any convening authority may refer charges to a court-martial convened by that convening authority or a predecessor, *unless the power to do so has been withheld by superior competent authority.*
(Emphasis added.)

On first review we note that appellant makes a plausible argument that § 0124, JAGMAN, was at least technically violated in this case. Nevertheless, he has not offered this Court persuasive legal authority that violation of this service regulation has *jurisdictional significance.* *United States v. Schneider,* 38 MJ 387 (CMA 1993), *cert denied,* —— U.S. ——, 114 S.Ct. 2100, 128 L.Ed.2d 662 (1994), a case cited by appellant, considered a different service regulation and never reached the question of the jurisdictional nature of its violation. 38 MJ at 392. Moreover, two service Court of Military Review cases relied on by appellant—*United States v. Olsen,* 24 MJ 669 (AFCMR 1987), and *United States v. Ortiz,* No. 80–2270 (NCMR April 10, 1981) (unpub.op.) [7]—were decided before the decision of this Court in *United States v. Jette,* 25 MJ 16 (1987). We think our decision in *Jette* controls this case. *See United States v. Yates,* 28 MJ 60 (CMA 1989); *see also United States v. Brown,* 39 MJ at 118.

In *United States v. Jette, supra* at 18, this Court commented on the impact of service regulation violations on statutory authorizations to convene courts-martial. We said:

The power to convene a court-martial, appoint or replace members, and approve findings and sentence is a power that Congress has traditionally reserved for command. *See* W. Winthrop, *Military Law and Precedents* 65–68 (2d ed. 1920 Reprint); G. Davis, *A Treatise on the Military Law of the United States* 18–19 (3d ed.1913). Its concern is not technical, but functional, because military justice plays an important role in the readiness of our servicemembers to wage war. *See United States v. Kugima,* 16 USCMA 183, 186, 36 CMR 339, 342 (1966); *United States v. Bunting,* 4 USCMA 84, 88, 15 CMR 84, 88 (1954). In such a context, we are not justified in attaching jurisdictional significance to service regulations in the absence of their express characterization as such by Congress. *E.g.,* Art. 23(a)(7). *See United States v. Greenwell,* 19 USCMA

460, 463, 42 CMR 62, 65 (1970); *United States v. Ortiz,* 16 USCMA 127, 36 CMR 283 (1966); *United States v. Ortiz,* 15 USCMA 505, 36 CMR 3 (1965).

(Footnote omitted.)

In appellant's case, we note that the convening authority was the Commanding Officer, USS FORRESTAL (AVT 59). He convened appellant's court-martial under authority of Article 23(a)(5), which states:

**§ 823. Art. 23. Who may convene special courts-martial**

(a) *Special courts-martial may be convened by*—

(1) any person who may convene a general court-martial;

(2) the commanding officer of a district, garrison, fort, camp, station, Air Force base, auxiliary air field, or other place where members of the Army or the Air Force are on duty;

(3) the commanding officer of a brigade, regiment, detached battalion, or corresponding unit of the Army;

(4) the commanding officer of a wing, group, or separate squadron of the Air Force;

(5) *the commanding officer of any naval* or Coast Guard *vessel,* shipyard, base, or station; the commanding officer of any Marine brigade, regiment, detached battalion, or corresponding unit; the commanding officer of any Marine barracks, wing, group, separate squadron, station, base, auxiliary air field, or other place where members of the Marine Corps are on duty;

(6) the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose; or

(7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned.

(b) If any such officer is an accuser, the court shall be convened by superior competent authority, and may in any case be

---

**7.** A copy of this unpublished opinion was attached to the Final Brief, so it is properly cited by counsel.

convened by such authority if considered advisable by him.

(Emphasis added.) Congress' specific designation of this commander as a convening authority was not made expressly dependent on service regulations or secretarial designation. *See United States v. Jette* and *United States v. Yates,* both *supra; cf. United States v. Allgood,* 41 MJ 492 (1995) (Codal designation provided for by secretary of service); *United States v. Brown, supra.* Accordingly, we are not persuaded that jurisdictional significance should attach to a violation of this service regulation by a properly constituted convening authority. *Id.*

On closer review, we conclude that appellant's jurisdictional argument fails on even a more fundamental ground. As noted above, he contends that § 0124, JAGMAN, constitutes a jurisdictional restriction on the authority of a military commander to convene special courts-martial. *See* RCM 201(b)(1); and RCM 504(b)(2) ("unless otherwise limited by superior competent authority"). Such an argument presumes that § 0124, JAGMAN, imposes *a binding limitation* on the power of an otherwise authorized commander to convene certain courts-martial. We note that § 0124 on its face only purports to establish service "policy" with respect to exercise of this power by subordinate commanders.

■ In *United States v. Sloan,* 35 MJ 4 (CMA 1992), Judge Wiss, speaking for this Court,[8] distinguished law and policy. He stated that "policy typically is not law. *See United States v. Stokes,* 12 MJ 229, 231 (CMA 1982)." 35 MJ at 9. He then generally defined "policy" as: "The *general principles* by which a government is *guided* in its management of public affairs or the legislature in its measures." *Black's Law Dictionary* 1157 (6th ed.1990) (emphasis added). We reaffirm

this holding today and conclude that § 0124, JAGMAN, imposed no legal or binding restriction on subordinate commanders that deprived courts-martial convened by them of jurisdiction. *Cf.* § 0124d (*"Limitations."* Personnel tried by Federal courts "shall not be tried by court-martial ... for the same act or acts.")

■ Finally, assuming § 0124 created at least a binding regulatory procedure (*e.g. United States v. Hawthorne,* 7 USCMA 293, 299, 22 CMR 83, 89 (1956)), we still conclude appellant's court-martial was lawful. The violation of a binding regulatory command "may be asserted by an accused only if it [the regulation] was prescribed to protect an accused's rights." *United States v. Sloan, supra* at 9, *citing United States v. McGraner,* 13 MJ 408, 415–18 (CMA 1982), *citing* and *discussing United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979). Here, routine procedure under this regulation called for a decision by the Judge Advocate General on whether appellant's case should be referred to trial by court-martial. ¶ (c)(1). Section 0124 on its face, however, expressly rejects this procedure as one benefiting an accused. Instead paragraph a specifically states: "This policy is based on comity between the Federal Government and State/Foreign Governments and is not intended to confer additional rights upon the accused."[9] Accordingly, appellant has no standing to complain about this regulation's violation. *Id.*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX, Judges CRAWFORD and GIERKE, and Senior Judge EVERETT concur.

---

8. There were four separate opinions in *United States v. Sloan,* 35 MJ 4, 12, 13 (CMA 1992), but all the judges agreed with Judge Wiss on Part III of his opinion concerning court-martial jurisdiction.

9. Appellant notes that "on April 23, 1988, SEC-NAV approved *T* JAG's issuance of the JAGMAN without prior SECNAV approval, except changes to those nondelegable and policy matters, which

will continue to be approved by SECNAV prior to publication.*d* " Final Brief at 13. However, he has not offered any support in the record or otherwise persuaded us that this section of the regulation was an "ultra vires" action of the Judge Advocate General promulgated without approval of the Secretary of the Navy. *See generally* 9 Wigmore, *Evidence* § 2534 (Chadbourn rev.1981).