UNITED STATES, Appellant,

v.

**Michael S. WATSON, Lance Corporal U.S. Marine Corps, Appellee.**

No. 68,206.
CMR No. 90–3661.

U.S. Court of Military Appeals.

Argued Nov. 4, 1992.
Decided July 9, 1993.

For the Accused: *Major Gregory S. Warner, USMC* (argued).

For the United States: *Lieutenant Ralph G. Stiehm, JAGC, USNR* (argued); *Colonel T.G. Hess, USMC* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Pursuant to his pleas, the accused was convicted of disobeying a lawful general order by possessing and carrying a sword with a 36–inch blade on Marine Corps Base, Camp Pendleton, California; conspiring to commit forgery and larceny; stealing a wallet; as well as forgery of 7 different charge-card sales receipts, in violation of Articles 92, 81, 121, and 123, Uniform Code of Military Justice, 10 USC §§ 892, 881, 921, and 923, respectively. He was sentenced by the military judge to a bad-conduct discharge, confinement for 6 months, total forfeitures, and reduction to the lowest enlisted pay grade. The Court of Military Review sitting *en banc* (5–4) ordered a new action. 35 MJ 602, 609 (1992).

The Judge Advocate General of the Navy certified the following issues:

I

WHETHER THE U.C.M.J., ARTICLE 60 ACTION TAKEN ON THE FINDINGS AND SENTENCE BY AN OTHERWISE STATUTORILY QUALIFIED OFFICER WAS RENDERED A LEGAL NULLITY BY FAILURE TO COMPLY WITH THAT PORTION OF JAGMAN 0145(b) [*] (SUBPARAGRAPH 0145(b)(2) OF JAG INSTRUCTION 5800.7B OF 1 JULY 1978) DELINEATING WHICH OFFICERS EXERCISING GENERAL COURT–MARTIAL JURISDICTION MAY TAKE ACTION ON A CASE

* *See infra,* 37 MJ at 167.

WHEN IT IS IMPRACTICABLE FOR THE ORIGINAL CONVENING AUTHORITY TO ACT.

## II

WHETHER THE AFORESAID JAGMAN PROVISION CREATES AN ENFORCEABLE INTEREST IN A SERVICEMEMBER WHOSE SENTENCE IS APPROVED BY AN ARTICLE 60 ACTION TAKEN BY AN OTHERWISE STATUTORILY QUALIFIED SUBSTITUTE GENERAL COURT–MARTIAL AUTHORITY WHOSE DESIGNATION AS SUCH DEVIATES FROM THE PROCEDURES SET FORTH IN THE JAGMAN PROVISION AT ISSUE BECAUSE HE WAS NOT WITHIN THE DESIGNATED CHAIN OF COMMAND.

## FACTS

■ On August 24 and September 5, 1990, the Staff Judge Advocate for the convening authority, Commanding General, 1st Marine Division, served his post-trial recommendation on trial defense counsel and appellant. On August 24, 1990, the Commanding General, 1st Marine Division, entered into a memorandum of understanding (MOU) with the Commanding General, Marine Corps Base (MCB), Camp Pendleton. Under this agreement the Commanding General, MCB, Camp Pendleton, was to act as the general court-martial convening authority for elements of the 1st Marine Division that remained at Camp Pendleton as 1st Marine Division (Rear) while the rest of the Division deployed to Operation Desert Shield/Storm. On August 29, 1990, the MOU was made applicable to post-trial actions. On November 2, 1990, the Commanding General, MCB, Camp Pendleton, took action on this case. We take judicial notice that Iraq invaded Kuwait on August 1, 1990. This resulted in a massive mobilization of U.S. Forces, Operation Desert Shield/Storm, including the 1st Marine Division, and Allied Forces under the control of the Commander–in–Chief, Central Command.

## DISCUSSION

Article 60(c)(1), UCMJ, 10 USC § 860(c)(1) (1983), addresses the convening authority's post-trial review functions and provides:

Under regulations of the Secretary concerned, a commissioned officer commanding for the time being, a successor in command, or any person exercising general court-martial jurisdiction may act under this section in place of the convening authority.

There would have been no question that the Commanding General, MCB, Camp Pendleton, would qualify as "a commissioned officer commanding for the time being" if the Secretary of the Navy had issued regulations so empowering him under circumstances like those presented here.

■ That does not appear to have been the case, however. In fact, the only relevant regulatory provision that has been drawn to our attention is what is now § 0151(b)(2), Manual of the Judge Advocate General of the Navy (JAGMAN), JAG Instruction 5800.7C (3 Oct.1990), which provides that, when "it is impracticable for" a convening authority of a command "in the chain of command of the Commandant of the Marine Corps" to take post-trial action in a case, "that person shall cause the record of trial to be forwarded to an officer exercising general court-martial jurisdiction over the command." The officers exercising general court-martial convening authority over the 1st Marine Division were, in ascending order: the Commander of I Marine Expeditionary Force; the Commanding General, Fleet Marine Force Pacific; the Pacific Fleet Commander; and Commander–in–Chief, Central Command. 35 MJ at 611. The Commanding General, MCB, Camp Pendleton, is nowhere in this chain.

Nonetheless, it is not difficult to sympathize with the plight of the Commanding General, 1st Marine Division, who was about to deploy while leaving elements of his command behind. *See generally* RCM 1107(a), Discussion, Manual for Courts-

Martial, United States, 1984 ("It would be impracticable for the convening authority to take initial action when, for example, ... a command has been alerted for immediate overseas movement ..."). In his absence, someone had to exercise practical as well as legal command over the Division's Rear elements, yet none of the commands mentioned above were nearby. For instance, the Marine Expeditionary Force, too, was in Southwest Asia, and the Pacific Fleet Commander was thousands of miles away in Hawaii. Under such circumstances, these superior commands do not obviously seem any more available to perform the post-trial functions in cases like this one than was the 1st Marine Division commander himself.

In *United States v. Jette*, 25 MJ 16, 18 (1987), this Court had occasion to observe:

> The power to convene a court-martial, appoint or replace members, and approve findings and sentence is a power that Congress has traditionally reserved for command. Its concern is not technical, but functional, because military justice plays an important role in the readiness of our servicemembers to wage war. In such a context, we are not justified in attaching jurisdictional significance to service regulations [that arguably were violated as to assumption of command] in the absence of their express characterization as such by Congress.

(Citations omitted.) Referring to *Jette*, this Court expressed similar sentiments in *United States v. Yates*, 28 MJ 60, 63 (1989):

> Again, our primary concern in these cases is to effect the will of Congress in enacting Articles 22, 23, and 24, UCMJ, 10 USC §§ 822, 823, and 824, respectively. The realities of command, not unexecuted technical possibilities, best satisfy the purpose of these statutes.

It is this notion of "[t]he realities of command" that leads us to conclude here that the Commanding General, Camp Pendleton, was acting as the *de facto* commander for the time being. Naval regulations at the time of this event did not provide for the legal impact of the practicalities of mobilization and rapid deployment. Nonetheless, neither Congress nor the Department of the Navy could possibly have contemplated that, when the 1st Marine Division departed and left some elements at Camp Pendleton while the bulk of the division—including its commander—went half-way around the world, the rear elements would be left without a commander.

The rationale of *Jette* and *Yates* indicates that Commanding General, Camp Pendleton, as the *de facto* commander for the time being of the Division's Rear elements, could lawfully exercise the general court-martial convening authority of that element of the command. On this basis, we answer the first certified question in the negative. This disposition makes it unnecessary to answer the second certified question.

The decision of the United States Navy–Marine Corps Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to that court for further review under Article 66, UCMJ, 10 USC § 866.

Chief Judge SULLIVAN and Judges COX and WISS concur.

GIERKE, Judge (dissenting):

I cannot join the rescue mission conducted by the majority opinion in this case. That opinion holds that two subordinate officers can thwart the Secretary of the Navy's limitations on their authority by simply agreeing to do so.

In my opinion, this case involves more than an administrative defect in the assumption of command. It involves an action by a commander who exceeded his authority. The error was jurisdictional, making the convening authority's action in this case void.

Command is not synonymous with authority to convene general courts-martial. Even if we accept the majority opinion's premise that the Commanding General, Marine Corps Base (MCB), Camp Pendleton,

was the *de facto* commander of the rear elements of the 1st Marine Division, his status as *de facto* commander of those rear elements did not confer authority to exercise general court-martial jurisdiction over them, absent express secretarial authorization.

A base commander's statutory authority is limited to convening special courts-martial. Art. 23(a)(5), Uniform Code of Military Justice, 10 USC § 823(a)(5). He does not have authority to convene general courts-martial unless the secretary of his service grants it. Art. 22(a)(8), UCMJ, 10 USC § 822(a)(8). Since the Commanding General, MCB, Camp Pendleton, was dependent on secretarial designation for his authority, the Secretary of the Navy had the power to limit his authority. *Cf.* RCM 401(a), Manual for Courts–Martial, United States, 1984 (superior authority may limit authority to dispose of charges). In this case the Secretary of the Navy limited the base commander's authority to cases in his administrative chain of command. 37 MJ at 167.

Both *United States v. Yates*, 28 MJ 60 (CMA 1989), and *United States v. Jette*, 25 MJ 16 (CMA 1987), relied upon by the majority opinion, are inapplicable to this case. Those cases involved subordinate officers who assumed *de facto* command of their own organizations. This case, however, involves an officer purporting to exercise general court-martial jurisdiction over a unit in a separate chain of command which was specifically excluded from his secretarial grant of authority.

The reference in Article 60(c)(1), UCMJ, 10 USC § 860(c)(1) (1983), to "a commissioned officer commanding for the time being," upon which the majority opinion is based, has no application to the situation in this case. It applies to temporary assumption of command, not transfer of elements

of a command to a different command. The term historically was intended to cover the situation "when an assigned commander is not present for duty with his command because of illness, leave, or for any other cause." In such case, "the commissioned officer temporarily succeeding to command during that absence is, within the meaning of Article 60, the officer commanding for the time being and, as such, is authorized to take initial action as convening authority on a record of trial of a court convened by the assigned commander." Para. 84*b*, Manual for Courts–Martial, United States, 1969 (Revised edition); *see* para. 84*b*, Manual for Courts–Martial, United States, 1951. The Commanding General, MCB, Camp Pendleton, was never in command of the 1st Marine Division, *de facto* or *de jure*, "for the time being" or otherwise. At most, he exercised some aspects of command over a small element of the 1st Marine Division. Therefore, he did not have the statutory authority conferred by Article 60(c). His authority was limited to that conferred by the Secretary of the Navy, which specifically excluded him from acting with respect to courts-martial convened by a tactical commander.

I have no desire to place unnecessary technical niceties in the path of military operations, but we are not talking about a burdensome requirement in this case. If military exigencies required it, the Secretary's limitations on the base commander's authority could have been lifted by a simple telephone call and confirmed by message or letter.

In my opinion, the Commanding General, MCB, Camp Pendleton, exceeded the authority given to him by the Secretary of the Navy when he purported to act on a case in the tactical chain of command. I regard his action as void. Accordingly, I dissent.